UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IRONSHORE SPECIALTY INSURANCE
COMPANY,

          Plaintiff,

v.

GENESEE COUNTY, PATRICK FULLER,
ROBERT NUCKOLLS, DAVID KENAMER,
KYLE GUEST, MARK WING, JASON WHITE,
WILLIAM JENNINGS, and EVEREST
NATIONAL INSURANCE COMPANY,

          Defendants,
and

WILLIAM JENNINGS,

         Cross-plaintiff,

v.

GENESEE COUNTY and EVEREST NATIONAL
INSURANCE COMPANY,

         Cross-defendants.
_____/

Case Number 17-10802
Honorable David M. Lawson

## OPINION AND ORDER DENYING MOTION TO STAY PROCEEDINGS, DISMISSING DEFENDANT WILLIAM JENNINGS'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING CASE WITHOUT PREJUDICE

Plaintiff Ironshore Specialty Insurance Company commenced this lawsuit seeking a judgment declaring that it had no obligation to indemnify several of the defendants under its excess insurance policy for a money judgment entered in a jail beating case. Circumstances have changed since the lawsuit was filed, however: the Court in the underlying liability case granted a remittitur, which the liability plaintiff refused, and that case is scheduled for a new trial. Because there no longer is a judgment against the insured defendants, coverage issues apparently have changed, and

Ironshore now moves to stay this case. The only party opposing the motion is defendant William Jennings, who was the successful plaintiff in the liability case now awaiting trial. Jennings also has filed a motion for summary judgment against Ironshore seeking coverage for the now-vacated judgment. The change of circumstances — and the uncertainty of the outcome of the underlying liability case that spawned this lawsuit — counsel against exercising discretionary jurisdiction conferred by the Declaratory Judgment Act over this tentative dispute. Therefore, the Court will deny Ironshore's motion to stay the case, dismiss Jennings's motion for summary judgment, and dismiss the case without prejudice.

I.

The plaintiff in the underlying action, William Jennings (named as a defendant in this case), alleged in his complaint that several Genesee County deputy sheriffs beat him severely while he was in custody at the county jail following a 2010 arrest for drunk driving. The case proceeded to a jury trial in this District before Judge Avern Cohn, which resulted in a jury verdict against several defendants exceeding $36 million. *Jennings v. Fuller*, No. 13-13308 (E.D. Mich. Nov. 7, 2016). The County's primary insurer, defendant Everest National Insurance Company, had issued a policy to the County with a $10 million coverage limit, and Ironshore had issued an excess coverage policy for amounts beyond that limit. After the verdict, excess insurer Ironshore filed this declaratory judgment action seeking a ruling that it is not obligated to indemnify the County against the judgment, because (1) the County never provided it with the requisite notice of the litigation before the verdict was returned; and (2) the jailhouse incident does not qualify as an "occurrence" under the terms of the policy, because it was not "accidental." Jennings filed a cross-claim against

Genesee County and its primary carrier, Everest, seeking a declaration of coverage for the underlying incident.

On May 23, 2017, Judge Cohn denied the defendants' motions for a new trial in the injury case and granted their motion for remittitur, reducing the verdict to $11 million. With the County's self-insured retention of $350,000, that narrowed Ironshore's potential exposure in the underlying case from somewhere north of $20 million to less than one million dollars. However, on June 2, 2017, Jennings filed a notice of refusal to remit, and Judge Cohn subsequently vacated the judgment entered on the verdict and scheduled the case for a new trial in March 2018. Presently, there is no judgment against the defendants in Judge Cohn's case.

Ironshore filed its complaint in this case on March 14, 2017. Defendant (here) Jennings filed a motion for summary judgment on April 18, 2017, taking issue with both of Ironshore's coverage defenses. The majority of Jennings's motion brief concerns the notice defense, which now appears to be a dead letter, since Ironshore certainly cannot claim any longer that it did not receive notice of the litigation before the second trial in the underlying case. Ironshore argues in its stay motion that, since the remittitur was granted and refused, and the underlying case now is set for a second trial, its claims in this case have become indeterminate, because, for now at least, there is no underlying judgment that arguably could implicate its coverage. Jennings contends that if past is prelude, then there is a good chance he will obtain a large money judgment eventually against Ironshore's insureds, and he should not have to wait to clear up the coverage questions and prolong his inevitable payday.

II.

There are two considerations at work here, each of which implicates the propriety of a federal court spending its limited resources to address disputes that are still in formation. The first, invoked by Ironshore, is the power to stay a pending action. As Ironshore has noted in its brief, "'[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court.'" *FTC v. EMA Nationwide, Inc.*, 767 F.3d 611, 626-27 (6th Cir. 2014) (quoting *Ohio Environmental Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)). In deciding whether a pending action should be halted for a while or proceed, a court must "exercise [its] judgment" by "weigh[ing] competing interests and maintain[ing] an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

The other consideration is presented naturally by the Declaratory Judgment Act, 20 U.S.C. § 2201(a), which is the basis of Ironshore's complaint and Jennings's cross-claim. A court's "exercise of jurisdiction under the Declaratory Judgment Act . . . is not mandatory." *McCormack v. Scottsdale Ins. Co.*, 130 F. Supp. 3d 1069, 1070 (E.D. Mich. 2015) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). "'By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.'" *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 969 (6th Cir. 2000) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)). Therefore, the Court has discretion to decline jurisdiction over a declaratory judgment action even where the parties are diverse and the amount in controversy meets the threshold. *Omaha Property and Cas. Ins. Co.*

*v. Johnson*, 923 F.2d 446, 447 (6th Cir. 1991) ("We have repeatedly held in these insurance coverage diversity cases that the Declaratory Judgment Act grants the district courts a discretion to entertain such cases. . . .").

All of this assumes, of course, that the parties have presented to the Court an actual controversy that was ripe when the case was filed and remains ripe throughout the proceedings. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

When determining whether a declaratory judgment action is ripe for adjudication, "[t]he test to be applied . . . 'is whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "In order to determine whether a claim is ripe, this court examines (1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and, (3) hardship to the parties if judicial review is denied." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Adult Video Ass'n v. United States*, 71 F.3d 563, 568 (6th Cir. 1995)).

There is little question that an actual controversy existed when the complaint was filed initially. However, "[t]o ensure a case remains 'fit for federal-court adjudication,' the parties must have the necessary stake not only at the outset of litigation, but throughout its course." *Camreta v. Greene*, 563 U.S. 692, 701 (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67(1997)).

The posture of the underlying case on which the present lawsuit is based calls into question the immediacy of the present dispute. Judge Cohn's grant of a remittitur, coupled with Jennings's refusal to accept it, has brought the tort case back to square one, or nearly so. And although there are several possibilities of how that case will conclude, the outcome is all but certain. The plaintiff could prevail at the new trial and obtain a damage award either below or above the original verdict. If the former — or if there is a defense verdict — the plaintiff would have the option to appeal Judge Cohn's order of remittitur and new trial. And the outcome of the appeal certainly is not foreordained. A verdict for Jennings following the new trial could be more than he received in the first case, but the jury could allocate more to compensatory damages and less to punitive damages.

This uncertainty, in turn, blurs the coverage questions initially presented in the complaint and cross-claim. If a second verdict for the plaintiff is greater than he received in the first case, then Ironshore's policy defense (whether an "occurrence" triggered coverage) will need to be adjudicated, but its notice defense, which could consume substantial resources to address, almost certainly would be moot. Moreover, if the verdict is for less than Everest's limit of coverage, then Ironshore's policy may not be implicated at all. Jennings points to the potential of an appeal that could result in reinstatement of the original verdict, but it is not at all certain at this point that such an appeal would be taken, and it is even less certain that it would succeed. It is at least equally likely that a lower adverse verdict could be affirmed, or an even more severe remittitur of a larger verdict imposed on appeal.

That is not to say that no actual controversy exists at present, since Ironshore has raised the issue whether the jail beating administered by defendants Patrick Fuller, Robert Nuckolls, David Kenamer, Kyle Gust, Mark Wing, and Jason White fits within the definition of "occurrence" in

Everest's policy (to which Ironshore's policy follows form), thereby triggering coverage initially. The outcome of the first liability trial suggests that a favorable result for Jennings is more than a remote possibility, and the factual record in that case probably is developed sufficiently for adjudication of the coverage question. Article III standing is established when a plaintiff has "'suffered an injury in fact' that is caused by 'the conduct complained of' and that 'will be redressed by a favorable decision,'" *Camreta*, 563 U.S. at 701 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561(1992)), and "the opposing party also [has] an ongoing interest in the dispute, so that the case features 'that concrete adverseness which sharpens the presentation of issues,'" *ibid.* (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 (1983)). Those basic requirements are satisfied here.

But the question remains whether the Court should exercise its discretionary authority under the Declaratory Judgment Act. The Sixth Circuit has suggested factors to consider in a slightly different context, that is, when an insurance company seeks a declaratory adjudication of a coverage question when a liability action is pending in another court:

>   (1) whether the judgment would settle the controversy;
>   (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>   (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>   (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>   (5) whether there is an alternative remedy that is better or more effective.

*Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004) quoting *Scottsdale Ins. Co.*, 211 F.3d at 968 (citations omitted)).

Here, it is far from certain that a declaratory judgment would settle any present controversy between the parties or serve a useful purpose. With the uncertainty of the outcome of a second trial, and what may or may not happen after it, there is a real possibility that the result of the second trial and any ensuing appeal could moot the entire matter before this Court, and any resources spent by the parties and the Court dealing with issues in this case could be wasted for no good end. There is no suggestion in the record that the parties have abused the process for "procedural fencing" by filing this lawsuit, or that friction would result from a decision in this case. But waiting for a final result in the case before Judge Cohn, and then adjudicating an action on the policy involving all the affected parties, is a more sensible option. And the parties always have the alternative of litigating the coverage questions in a garnishment proceeding if Jennings wins a favorable judgment. *See Thomson v. Hartford Cas. Ins. Co.*, 656 F. App'x 109 (6th Cir. 2016).

Jennings's argument that not proceeding with this case would deny him justice misses the mark. Any harm he will suffer from any delay of his right to recovery would stem from the already-accomplished prolongation of the underlying lawsuit, and nothing that can happen in this case would *further* delay the resolution of his rights. Moreover, the case can be revived once any decisive result is achieved in the underlying lawsuit, either in the form of a second money judgment that could implicate Ironshore's coverage (notwithstanding the potentiality of any ensuing post-judgment motions or appeal), or if Jennings prevails on an appeal from a lesser verdict or no-cause and secures a reinstatement of the original verdict.

In either event, prudence counsels abstaining from declaring a judgment until the facts in the liability action are clarified. As the Supreme Court observed in a jurisdictional context, "Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the

case before them, and confines them to resolving real and substantial controversies admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (quotations and citations omitted). The recent developments in the underlying liability case have transformed certain facts into hypothetical ones. Until that status changes, there is no point in deciding the what-ifs, when the Court has discretion to decline the invitation to do so. *McCormack v. Scottsdale Ins. Co.*, 130 F. Supp. 3d 1069, 1070 (E.D. Mich. 2015) (noting that "at times the better exercise of discretion favors abstention") (citing *Bituminous Cas. Corp.*, 373 F.3d at 812).

### III.

Because the exercise of jurisdiction under the Declaratory Judgment Act is discretionary, the Court sees little advantage in staying the case compared to dismissing it in its present posture.

Accordingly, because the motion papers adequately set forth the relevant facts and law, and oral argument will not aid in the disposition of that motion, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(f)(2).

It is further **ORDERED** that the plaintiff's motion to stay proceedings [dkt. #44] is **DENIED**, and the hearing scheduled for September 7, 2017 is **CANCELLED**.

It is further **ORDERED** that defendant Jennings's motion for summary judgment [dkt. #7] is **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that the case is **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: September 7, 2017

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 7, 2017.

                                          s/Susan Pinkowski
                                          SUSAN PINKOWSKI